## D. M. Osborne & Co. and David W. Karraker v. Lafayette Rich, Late Sheriff, &c., for the use of Theodore B. Williams et al.

1. REPLEVIN—*Against an Assignee.*—An action of replevin will not lie against an assignee under the act of assignments for the benefit of creditors, for goods in his possession under the assignment.

2. LOST INSTRUMENTS—*Suits on—Evidence, etc.*—In a suit upon a lost replevin bond, it is error to submit to the jury the question of fact whether a replevin bond had been given as alleged in the declaration, where there is no evidence upon which to base such submission.

3. SAME—*Evidence of Substance.*—While it is not necessary to prove literally the contents of a lost instrument, the substance must be proven.

4. PLEADING—*Non est Factum Not Sworn to.*—The plea of *non est factum*, not sworn to, does not require proof of the execution of the instrument sued on, but is a plea under which the defendant can rely on any legal defense that he could have relied upon at common law, except merely denying or disputing the execution of the writing declared on.

5. SAME—*Non est Factum at Common Law.*—At common law the defense of variance was available under this plea. It is of no avail, however, if the plaintiff makes out his case by the introduction of the bond declared on.

6. SAME—*Non est Factum Admits All Material Averments.*—Under a plea of *non est factum* in a suit upon a penal bond, the breaches assigned do not have to be proven, for it admits all material averments.

7. VARIANCE—*Under the Plea of Non est Factum.*—A variance between the pleadings and the instrument sued on can be taken advantage of under this plea.

8. WAIVER—*Of Contractual Rights.*—A frequent waiver of an express contractual right can not be said to mature into a custom to destroy an express contract contradictory to, and inconsistent with, such practice or assumed custom.

9. CUSTOM—*May Annex Terms to a Contract.*—A custom may annex terms to a contract or modify the same by interpretation of the terms, but it never can eliminate terms of the contract.

10. CONTRACTS—*Conditions Not Waived.*—A manufacturer entered into a contract with a party to sell its machines, and expressly required such party to give a note for such of the machines as were left unsold at the end of each year, to be indorsed by some responsible person, and that no outside verbal understanding with the traveling agent should be of any force or effect whatever. When the agent came to settle there was one machine left unsold, for which the party proposed to give his unsecured note. The agent took and transmitted the note to his principal for approval but it was rejected. In the meantime the party made an assignment and the machine was delivered to the assignee. *It was held,* that the manufacturer lost none of his rights and was entitled to the machine.

**Memorandum.**—Suit on replevin bond. Appeal from the Circuit Court of Union County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the February term, 1894, and reversed. Opinion filed June 23, 1894.

The opinion states the case.

JAMES LINGLE, attorney for appellants.

H. F. BUSSEY, attorney for appellee.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

This suit was brought by appellee, as sheriff, for the use of the assignees of T. B. Williams, on a replevin bond alleged to have been executed by appellants on the 15th day of September, 1888, in the penal sum of $600.

The facts out of which the replevin suit arose, briefly stated, are that on the 23d day of December, 1887, D. M. Osborne & Co. entered into a written contract with T. B. Williams, whereby the latter was to sell certain farm machinery for them at a certain commission during the year 1888, which was to be shipped to Williams between the first of February and May, 1888, and any machines that remained

unsold by Williams at the end of the season, September 1, 1888, the company might receive back, or require him to pay for them, at the company's option, by giving his promissory notes for the amount thereof, as per price stipulated in the contract, payable, one-half October 1, 1889, and one-half January 1, 1890, such notes " to be indorsed by some responsible person." The contract provided that it represented the entire agreement between the parties, and "that it can not be changed in any manner except by written agreement approved by D. M. Osborne & Co., manager, and that no outside verbal understanding with the traveling agent of D. M. Osborne & Co. is of any force or effect whatever."

Certain machines were left over, and on the 23d day of August, 1888, when a Mr. Platt, representing the company, for the first time that season called upon Williams for a settlement of the machines sold, Williams, who had been the company's agent under substantially like contracts for a number of years, stated as to the machines so left unsold that his custom had been to give his own unsecured note to the company for such machines; therefore he gave Platt his note, unindorsed, for $351.50, payable to the company, Platt stating he would send it in to the company for its approval, which was received by the company's managers about the 31st day of August, 1888, who rejected the note, and pinned a memorandum thereon at the time to that effect, having learned that Williams was insolvent. On September 3d, three days thereafter, Williams made an assignment, under the statute, of all his property, including the machines so left unsold. The note above referred to was tendered to the assignees about the 11th day of September, about the time when the assignees qualified by giving bond, and the said machines demanded by the company as its property, which tender and demand was refused by the assignees, whereupon the replevin suit was instituted (in which the bond in suit was given) against the assignees, and the property in controversy obtained by the company. The case was tried in the Circuit Court, judg-

ment rendered against the company, which was appealed to
this court (34 Ill. App. 421), where the judgment was re-
versed, with directions to dismiss the suit on the ground
that an action in replevin would not lie against the assign-
ees.   The lower court complied with the order, and awarded
to the assignees a writ of *retorno*, whereupon this suit was
brought on the replevin bond, and the defendants therein
plead: 1.  *Non est factum* unverified.  2.  *Nul tiel* record.
3.   Property in D. M. Osborne & Co., at time of the replevin
suit; no trial on merits, etc.   On a trial before a jury, ver-
dict was returned for the appellees herein, in debt $600,
with damages assessed at $334, on which, after overruling
a motion for a new trial, the court entered judgment, from
which this appeal was taken, and numerous errors assigned
relating to the admission of evidence and the giving of in-
structions.

The replevin bond was lost, which fact was averred in
the declaration, and a substantial copy was alleged to be
attached thereto, upon which breaches were assigned.
There was proof of the date, amount and signatures to the
bond.   Neither the clerk nor the deputy sheriff, who served
the writ of replevin, remembered having seen the bond.
The sheriff could not tell anything about the terms of the
bond, nor were the contents in any material respect proved.
The court refused to admit the copy of the bond filed
with the declaration, in evidence.   The court submitted to
the jury the question of fact whether a replevin bond had
been given as alleged in the declaration.   In this there was
error, as there was no evidence upon which to base it.
While it is not necessary to prove literally the contents of
a lost instrument, the substance thereof must be proven.
Wharton on Ev., Vol. 2, Secs. 129–140.   The proof must
leave no doubt of its material provisions.   Rankin v. Crow,
19 Ill. 626; Bennett et al. v. Waller et al., 23 Ill. 97.   It is
said by appellee, the proof showing a replevin bond was
given, the law will presume it was a proper bond.   This
view is not believed to be correct.   It has been held where
there was proof of loss of a paper, that it was not proper for

a witness to testify that it was regular and contained all that was necessary and proper. Massure v. Noble, 11 Ill. 531. It is further suggested by appellee that the general issue was not pleaded, and that the plea of *non est factum*, not sworn to, did not require proof of the execution of the bond. That is the law, but it is a proper plea (Langley v. Norvall, 1 Scam. 389), under which the defendant can "rely on any legal defense that he could have done at common law, except merely denying or disputing the execution of the writing declared on." At common law the defense of variance was available under this plea. 1 Chitty, p. 483; Mix v. The People, 92 Ill. 549. It is of no avail, however, if the plaintiff makes out his case by the introduction of such a bond as he had declared on. Pritchell et al. v. The People, 1 Gilm. 525–530. Under such a plea the breaches assigned do not have to be proven, for it admits all material averments. 1 Chitty, p. 483, n. 2, citing several cases, which in being examined, show that the instruments sued on were introduced in evidence. The point of variance can be made under this plea. In this case it raised the question whether the proof showed in substance such a bond as that sued on. It is clear the proof did not so show. A point is also made as to the admission of evidence to show that the custom of the company had been to settle with Williams for machinery not sold at the close of the season, by taking his unsecured note therefor. The court permitted such evidence to be introduced over the objection of the defendant. This was error. The fact the company had formerly waived its right to require security did not render nugatory an express provision in the contract of 1888, which required such security to be given. What the company did in that respect before the year 1888, did not amount to a custom in the proper sense of that word. A frequent waiver of an express contractual right can not be said to mature into a custom, to destroy an express contract contradictory to and inconsistent with such practice or assumed custom. A custom may annex terms to a contract or modify the same by interpretation of the terms, but it never can eliminate terms. Dixon v. Dunham,

14 Ill. 324; Deshler v. Beers, 32 Ill. 368; Lonergan v. Court-ney, 75 Ill. 580; Corbett v. Underwood, 83 Ill. 324; Gilbert & Co. v. McGinnis et al., 114 Ill. 28.

The vital question in this case, however, lies in the proper interpretation of the contract between the company and Williams. These assignees stand in his shoes. There are no intervening rights of third parties involved. As stated, that contract expressly required Williams to give a note for such of the machines as were left unsold " to be indorsed by some responsible persons." It further provided "that no outside verbal understanding with the traveling agent * * * is of any force or effect whatever," and "that it (the contract) can not be changed in any manner except by written agreement, approved by D. M. Osborne & Co's. manager." In addition to these express provisions of the contract, the company's agent—Platt—testified, which Williams declined to deny, that he took the note, not under the contract, but to send to the company, for it to determine whether or not the note would be accepted for the machinery, and thereby a sale be consummated. Williams knew the agent had no right to waive the terms of the contract as expressed in writing or print, and the agent testified that in fact he had no authority to do so. This is not disputed by any evidence. It follows therefore, that the proposition of purchase by Williams was not made under or by virtue of, but independent of the contract, the effect of which was to offer his unsecured note for the property, not in view of any prior negotiations, but independent thereof.

The case, therefore, stands as if no written contract had ever been made between the parties. Looking at this trans-action from that point of view, it would hardly be con-tended that, as between the parties, the sending of the note constituted a sale of the machinery, or that the company would have to be swift to reject and return the note or the title would pass. In the consideration of this matter the act of the agent is unimportant. He only had the authority to declare the option of the company to sell the property to Williams on the terms stated, without right to change or modify the terms agreed upon in writing. The proof is

uncontradicted that the oral proposition of Williams was promptly rejected, and therefore no title passed. Williams, by his new proposition, and by intrusting the transmission of the same to the company by its agent, could not require it to act promptly in order to avoid the transfer of title to its property on terms to which it had never agreed. These assignees are in no better position than their assignor. One of the four necessary elements of a sale of property is "mutual assent." Benjamin on Sales, Sec. 1. That element is lacking in this case, and therefore the judgment is reversed without remanding.